IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**WORLD FUEL SERVICES, INC.**,

    Plaintiff and
    Counter Defendant,

v.

**ANDREW M. MARTIN**,

    Defendant and
    Counter Claimant.

No. 3:16-cv-02303-MO

OPINION AND ORDER

**MOSMAN, J.**,

This matter comes before me on the parties' Cross-Motions for Summary Judgment [52, 54] and World Fuel's Motion to Strike [59]. For the reasons below, I GRANT in part and DENY in part the Cross-Motions for Summary Judgment, and DENY as moot the Motion to Strike.

## BACKGROUND

This case involves complicated dealings between an aviation operations company, its subsidiaries, and several creditors. Evergreen Holdings ("Holdings"), as its name indicates, is a holdings company. Holdings provided aviation services through two subsidiary companies: Evergreen International Aviation ("Aviation") and Evergreen Vintage Aircraft ("Vintage"). Aviation also has a number of subsidiary companies: Evergreen International Airlines ("Airlines"), Evergreen Aviation Ground Logistics Enterprises, Evergreen Trade, and Evergreen Agricultural Enterprises. Holdings's assets appear to be limited to its stock in Aviation and

1 – OPINION AND ORDER

Vintage, and its ownership of a property located in Yamhill County at 3800 NE Three Mile Lane (the "Property"). Schweitzer Decl. [53], Ex. 21. To complicate matters, Aviation and Vintage are in bankruptcy proceedings, and the ownership of the Property is disputed: the bankruptcy trustee claims it is owned by Aviation and is seeking to impose a constructive trust on the Property for the benefit of Aviation.

Plaintiff and Counter Defendant World Fuel Services and Defendant and Counter Claimant Andrew Martin each claim a financial interest in the Property. Both parties allege in this litigation that the other's claim is based on a fraudulent conveyance under O.R.S. §§ 95.230–95.240 and should be avoided.

## I. World Fuel Services' dealings with Airlines

Plaintiff World Fuel Services is an aviation fuel supplier who supplied fuel and services to Airlines. Second Amended Complaint ("SAC') [18] ¶¶ 1, 6-7; Sweitzer Decl. [53], Ex. 1 at 10, 16–18. After Airlines had trouble paying World Fuel for fuel, World Fuel and Airlines signed a series of payment plan agreements in 2010 and 2012. Sweitzer Decl. [53], Ex. 1 at 11–14. In May 2012, World Fuel and Airlines attempted to address Airlines's payment problems by signing a Continuing Guaranty and Joinder to Continuing Guaranty. Sweitzer Decl. [53], Exs. 6, 7. On July 20, 2012, Airlines and World Fuel signed two new agreements: one which gave World Fuel interest in three vintage planes, and a guaranty signed by Vintage and by Holdings (the "Blanket Guaranty"). Sweitzer Decl. [53], Exs. 8, 9.

But Airlines continued to struggle with its debts to World Fuel. By April 2013, Airlines and its affiliates owed World Fuel $9 million. Sweitzer Decl. [53], Ex. 11. At the time, Aviation was in the middle of selling its stock in another related company, Evergreen Helicopters, for $250 million. Sweitzer Decl. [53], Ex. 10. In conjunction with the Helicopters sale, Airlines

negotiated an agreement with World Fuel to pay down $6 million of its debt in exchange for the release of three interests World Fuel held. Sweitzer Decl. [53], Ex. 13. World Fuel received the first payment from this agreement for $5.2 million, but never received a second payment for $800,000. Sweitzer Decl. [53], Ex. 1 at 24–25. In September 2013, World Fuel stopped supplying fuel to Airlines entirely after Airlines did not answer a written demand for immediate payment. Sweitzer Decl. [53], Ex. 16.

In December 2013, World Fuel filed a lawsuit against Airlines, Aviation, Holdings and several other affiliate companies in Yamhill County, seeking payment of Airlines's debts. Sweitzer Decl. [53], Ex. 18. Judge Carroll J. Tichenor granted summary judgment in favor of World Fuel against Holdings and Evergreen Agricultural Enterprises in December 2014 and entered a money judgment in February 2015 in the amount of $9,093,297.57. Sweitzer Decl. [53], Ex. 19, 20. This judgment appears as an encumbrance against the Property. Sweitzer Decl. [53], Ex. 19, 20. There are at least two other judgments encumbering the Property: a 2013 money judgment for $227,404.73 registered in Oregon by Aersale, Inc. in 2014, and a 2010 judgment registered in Oregon in 2013 by Chemoil Corp. Sweitzer Decl. [53], Exs. 24, 26, 27.

**II.     Mr. Martin's loan**

Andrew Martin is a private lender who loaned $4.2 million to Aviation in July 2013 after some complications with the April 2013 Helicopters sale. Martin Decl. [56] ¶ 11; Ex. 3. According to Aviation's President, Blythe Berselli, the Helicopters sale could not go through unless the parties paid back Banner Bank, which held a trust deed against the property.[1] Stephens Decl. [55], Ex. 3, at 56–59. Ms. Berselli testified that Aviation's owner, Delford Smith, agreed to

---

[1] In its Reply Memo, World Fuel moves to strike Ms. Blythe Berselli's testimony about the positions of Banner Bank, Delford Smith, and VAC. [59]. Although I refer to Ms. Berselli's testimony for context here, I do not rely on Ms. Berselli's testimony for my ultimate conclusions in this opinion. I therefore DENY as moot World Fuel's Motion to Strike [59].

3 – OPINION AND ORDER

loan $3.5 million to Aviation via his limited liability company, Ventures Acquisitions Company ("VAC"), to allow the closing of the Helicopters sale. Stephens Decl. [55], Ex. 3, at 59–60. On the day the Helicopters sale closed, VAC wired $3.5 million to Aviation. Stephens Decl. [55], Ex. 5.

Aviation then sought a lender to repay the loan to VAC. After two banks declined to finance a loan, Aviation contacted Mr. Martin via several intermediaries in June 2013. Martin Decl. [56] ¶ 3. According to Mr. Martin, he reviewed numerous documents, including an executive summary of the loan, the referring broker's opinion letter, and hundreds of other pages provided by Aviation, Holdings, and Delford Smith. Martin Decl. [56] ¶¶ 4–9. The executive summary provided to Mr. Martin stated that the loan funds would be used as "[r]eimbursement to owner for $3.5M balance payoff of Banner Bank debt (necessary to execute sale of Evergreen Helicopter)." Martin Decl. [56], Ex. 1. On July 17, 2013, Mr. Martin and Aviation signed a secured loan agreement, with Holdings, Delford Smith, and Delford M. Smith, LLC, serving as guarantors. Martin Decl. [56], Ex. 3. In return for the secured loan agreement, Holdings provided Mr. Martin with a Trust Deed to the Property, which was appraised at $7.2 million at the time. Martin Decl. [56], Ex. 4.

According to the settlement statement issued upon closing of the loan, Delford Smith was to receive $3.5 million and $36,459.36 in interest. Stephens Decl. [55], Ex. 4. But Aviation instructed the title company via email to wire the interest and $3.5 million repayment to VAC, not Delford Smith. Stephens Decl. [55], Ex. 6. Mr. Martin states he was not aware that the funds were disbursed to VAC. Martin Decl. [56] ¶ 12.

### III. Bankruptcy proceedings

Aviation filed for bankruptcy in December 2013 and Vintage filed for bankruptcy in December 2014. Sweitzer Decl. [53], Ex. 12, 23. In December 2015, the bankruptcy trustee

4 – OPINION AND ORDER

("Trustee") in Aviation's case filed a complaint against Holdings and World Fuel, alleging fraudulent conveyance claims against World Fuel. Motion [52] at 12 n.2; Bankruptcy Dkt. [685]. The Trustee argued that the May 2012 guaranty and the $5.2 million payment after the Helicopters sale were fraudulent. Motion [52] at 12 n.2; Bankruptcy Dkt. [685]. The Trustee also sought to impose a constructive trust over the Property, arguing Aviation is the true owner of the Property based on agreements related to the Helicopters sale. Bankruptcy Dkt. [685]. These claims are still pending in the bankruptcy court.

The Trustee also threatened to file a fraudulent conveyance claim against Mr. Martin in Aviation's bankruptcy proceedings, which Mr. Martin contested. Martin Decl. [56] ¶ 15. In March 2017, the Trustee and Mr. Martin settled their claims. Stephens Decl. [55], Ex. 33. The settlement agreement referred to Aviation's and Holdings's claims to ownership of the Property, Martin's "purported secured first priority lien" against the Property in the original principal amount of $4.2 million, and the Trustee's assertion of a constructive trust against the Property. Stephens Decl. [55], Ex. 33. The bankruptcy court approved this settlement over World Fuel's objections. Stephens Decl. [55], Ex. 33.

IV.     **Procedural history of this suit**

World Fuel filed this suit against Mr. Martin in December 2016, claiming fraudulent conveyance under O.R.S. §§ 95.230–95.240 and seeking a declaratory judgment that Holdings's transfer of interest in the property to Mr. Martin is void. SAC [18]. Mr. Martin counterclaimed that World Fuel's transfers, including World Fuel's prejudgment attachment and claim of lien, and the judgment itself, are void under O.R.S. §§ 95.230–95.240. Answer [19].

I previously denied World Fuel's Motions for Preliminary Injunction, for Reconsideration, and for Issuance of Provisional Process Restraining Order. [27, 36, 37, 40, 41, 43]. After a show cause hearing, I issued an order restraining the use of any funds generated

5 – OPINION AND ORDER

through the sale of property at issue and requiring said funds to be maintained in a trust account, and required World Fuel to post a $200,000 bond. [49, 51]. The parties then filed these Cross-Motions for Summary Judgment [52, 54].

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Both parties bring claims for fraudulent conveyance under Oregon's Uniform Fraudulent Transfer Act ("UFTA"), O.R.S. § 95.200 *et seq*. The parties each claim fraudulent conveyance under a constructive fraud theory, pursuant to O.R.S. § 95.230(1)(b) and O.R.S. § 95.240.[2] A plaintiff can prove constructive fraud under O.R.S. § 95.230(1)(b) or O.R.S. § 95.240 by showing "inadequate consideration for the property conveyed and the insolvency or near

---

[2] World Fuel conceded in its Reply and at oral argument that it is withdrawing its claim for actual fraud under O.R.S. § 95.230(1)(a). Reply [59] at 15.

insolvency of the debtor." *Doughty v. Birkholtz*, 964 P.2d 1108, 1112 (Or. Ct. App. 1998) (citing O.R.S. §§ 95.230(1)(b), 95.240) (internal citations omitted).

World Fuel moves for summary judgment on its claim for fraudulent conveyance, on Mr. Martin's counterclaim for fraudulent conveyance, and against all of Mr. Martin's affirmative defenses except his sixth affirmative defense, which alleges that World Fuel's "allegations [in his First Claim for Relief] are not independent grounds for establishing a fraudulent transfer under O.R.S. 95.230 or O.R.S. 95.240." Motion [52]; Answer [19] ¶ 30. Among other arguments, World Fuel argues that Mr. Martin's counterclaim is barred by the collateral attack doctrine.

Mr. Martin moves for summary judgment on his counterclaim for fraudulent conveyance, World Fuel's claim for fraudulent conveyance, on one of his affirmative defenses (his right to a lien under O.R.S. § 95.270(5)(a)) and against World Fuel's two affirmative defenses. Motion/Response [54]. Among other arguments, Mr. Martin argues World Fuel does not have standing to pursue its fraudulent conveyance claim against Mr. Martin, because that right belongs exclusively to the Trustee in Aviation's bankruptcy case.

I address only the parties' arguments on standing and the collateral attack doctrine, because they are dispositive of the claims in this case.

I.  **World Fuel's fraudulent conveyance claim against Mr. Martin**

Courts have held that even where state law allows creditors to bring fraudulent conveyance claims, "creditors may not 'vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets *to the exclusion of all creditors*.'" *Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs.*, Inc., 417 F. Supp. 2d 212, 221–22 (D. Mass. 2006) (quoting *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993)); *In re Pac. Gas*

*& Elec. Co.*, 281 B.R. 1, 13 (Bankr. N.D. Cal. 2002) ("Absent court approval, only a trustee or debtor in possession has standing to assert a fraudulent transfer action."); *see Am. Nat'l Bank of Austin v. MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) (holding that the Bankruptcy Code's automatic stay provision "prevents a creditor from continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed"). "The purpose of fraudulent conveyance law, whether state or federal, and of Section 548 is to prevent harm to creditors by a transfer of property from the debtor." *In re Murphy*, 331 B.R. 107, 124 (Bankr. S.D.N.Y. 2005). The parties do not cite relevant Oregon law, and Oregon courts do not appear to have addressed this issue. But the above-cited case law from other courts is persuasive and applicable in this context.

World Fuel argues the transfer by Holdings to Mr. Martin of an interest in the Property is fraudulent because Holdings received insufficient consideration from Mr. Martin's loan to Aviation. SAC [18] ¶ 15; Motion [52] at 14, 17. The relationship between Holdings and Aviation matters to this claim: because Holdings is the parent corporation of Aviation, Holdings received whatever value Aviation received from the Martin loan. *See In re Renegade Holdings, Inc.*, 457 B.R. 441, 444 (Bankr. M.D.N.C. 2011) ("[C]ourts presume that the parent corporation received a benefit in the form of increased stock value resulting from the increased strength and value of its subsidiary that results from the subsidiary receiving the proceeds of the loan guaranteed by the parent."). Thus, World Fuel's claim against Mr. Martin rests on the same argument as the Trustee's claim against Mr. Martin: that Aviation received insufficient consideration from the Martin loan. *See* SAC [18] ¶ 15; Stephens Decl. [55], Ex. 33.

Allowing World Fuel's claim to proceed would therefore interfere with the Trustee's exclusive right to bring such an action on behalf of Aviation. The Trustee's settlement agreement

with Mr. Martin released any claims against Mr. Martin based on his lien against the Property, which Mr. Martin obtained from Holdings.[3] Stephens Decl. [55], Ex. 33. Practically speaking, this has to be understood as the Trustee's release of the functional equivalent of a fraudulent conveyance claim against the Martin loan. Both claims rest on the same factual predicates and on the argument that Aviation received nothing from the Martin loan because the majority of the money went to Delford Smith's LLC to repay him for an undocumented loan. *See* SAC [18] ¶ 15; Stephens Decl. [55], Ex. 33. And the bankruptcy court approved the settlement of this claim between Mr. Martin and the Trustee, over World Fuel's objections. Stephens Decl. [55], Ex. 33. Allowing World Fuel's claim to go forward in this Court could potentially undo the bankruptcy court's decision to approve the settlement and would interfere with the Trustee's exclusive power to pursue such action. As World Fuel acknowledged at oral argument, the practical effect of any decision in this case could still affect Aviation's bankruptcy proceedings. I therefore conclude that World Fuel's claim is inextricably intertwined with the Trustee's now-settled fraudulent conveyance claim against Mr. Martin, such that World Fuel does not have standing to proceed.

The remaining concern with this conclusion is the hypertechnical argument that the Trustee's related claim to a constructive trust over the Property does not rely on a fraudulent conveyance claim. But looking to the practical effects of a judgment by this Court shows why allowing World Fuel to go forward with its claim would intrude into the Trustee's domain. The Trustee retains a pending claim for the imposition of a constructive trust over the Property and argues that the Property is owned by Aviation, not Holdings. Bankruptcy Dkt. [685]. Any

---

[3] It is true that Aviation was in bankruptcy, not Holdings. But the transfer of property, the loan arrangement with Mr. Martin, and the bankruptcy settlement are all bound up together in a common nucleus of facts that necessarily include Holdings. So the argument that the bankruptcy involved Aviation while this case is against Holdings is more imaginary than real.

9 – OPINION AND ORDER

decision by this Court in favor of World Fuel would be negated by a decision by the bankruptcy court that Aviation is the true owner of the Property.

I therefore conclude that World Fuel lacks standing to pursue its fraudulent conveyance claims, because the Trustee has exclusive standing to bring such claims in these circumstances. I GRANT summary judgment to Mr. Martin and DENY summary judgment to World Fuel on World Fuel's fraudulent conveyance claim.

**II.    Mr. Martin's fraudulent conveyance counterclaim against World Fuel**

**A.    The Trustee's exclusive right to pursue fraudulent conveyance claims also bars Mr. Martin's counterclaim.**

Although World Fuel does not argue that Mr. Martin lacks standing to bring his fraudulent conveyance claim, the same concerns apply to Mr. Martin's counterclaim in this context. The Trustee has a pending claim against World Fuel, alleging that the May 2012 guaranty and the $5.2 million payment after the Helicopters sale were fraudulent. Motion [52] at 12 n.2; Bankruptcy Dkt. [685]. Mr. Martin's fraudulent conveyance counterclaim is against the state court judgment, which rested in part on these events. Allowing this counterclaim to proceed would interfere with the Trustee's exclusive right to pursue such a claim, and I conclude Mr. Martin also lacks standing. I therefore GRANT summary judgment to World Fuel on Mr. Martin's counterclaim.

**B.    The collateral attack doctrine also bars Mr. Martin's counterclaim.**

Even if Mr. Martin had standing, his counterclaim is barred by the collateral attack doctrine. As Mr. Martin acknowledged at oral argument, his counterclaim focuses on World Fuel's February 2015 state court judgment because any claim against the July 2012 Blanket Guaranty is barred by the applicable statute of limitations. *See* O.R.S. § 95.280(2) (stating that a

claim under O.R.S. § 95.230(1)(b) or § 95.240(1) must be brought "within four years after the transfer was made or the obligation was incurred").

But Mr. Martin's counterclaim against the February 2015 state court judgment is barred by the collateral attack doctrine. "[A]s a general rule, if the court has jurisdiction over the parties and the subject matter, the ensuing judgment, even if erroneous is not void and cannot be collaterally attacked until reversed or annulled, no matter how erroneous it may be." *Rogue Valley Mem'l Hosp. v. Salem Ins. Agency, Inc.*, 510 P.2d 845, 849 (Or. 1973). Here, there is no evidence that World Fuel's state court judgment against Holdings has been reversed or annulled. And Mr. Martin's argument that Oregon law exempts claims of fraud from the collateral attack doctrine is not persuasive. Although Oregon courts have concluded that marriage-dissolution judgments may be collaterally attacked in UFTA proceedings, *Johnson v. Johnson*, 730 P.2d 1221 (Or. 1986) (en banc), Mr. Martin offers no evidence or supporting case law to show that this exception to the collateral attack doctrine applies here. *See Greeninger v. Cromwell*, 915 P.2d 479, 481 n.3 (Or. Ct. App. 1996) (noting that "[s]pecial scrutiny is applied to transfers between spouses where the debtor spouse is thereby rendered insolvent and unable to satisfy the claims of his creditors.") (quoting *Kardynalski v. Fisher*, 482 N.E. 2d 117 (Ill. Ct. App. 1985)).

And even if the marriage-dissolution exception applied more broadly, it would not apply to Mr. Martin's claim, which is based on allegations of constructive fraud. In *Greeninger*, the Oregon Court of Appeals applied *Johnson*'s holding to a claim of fraudulent transfer under Oregon's UFTA, concluding that a party could avoid a dissolution judgment by claiming and proving extrinsic fraud. *Id.* at 481. As the *Johnson* court explained, "[e]xtrinsic fraud consists of collateral acts not involved in the fact finder's consideration of the merits of the case. On the other hand, intrinsic fraud consists of acts which pertain to the merits." *Johnson*, 730 P.2d at

1222. Applying Oregon law under *Johnson* and *Greeninger* to a dissolution judgment, the Ninth Circuit concluded that under the Oregon UFTA, "[a] party may not proceed under a constructive fraud theory when challenging a state-court judgment collaterally, but constructive fraud is still a viable theory for challenging all other types of transfers." *In re Bledsoe*, 569 F.3d 1106, 1110 (9th Cir. 2009). Mr. Martin only alleges a fraudulent conveyance under a constructive fraud theory. I therefore conclude that even if Mr. Martin had standing, his counterclaim would still be barred by the collateral attack doctrine.

## CONCLUSION

For the reasons stated above, I GRANT in part World Fuel's Motion for Summary Judgment [52] and GRANT summary judgment to World Fuel on Mr. Martin's counterclaim. I DENY summary judgment to World Fuel on its claim for fraudulent conveyance and DENY as moot World Fuel's Motion on Mr. Martin's affirmative defenses. I GRANT in part Mr. Martin's Motion for Summary Judgment [54] and GRANT summary judgment to Mr. Martin on World Fuel's fraudulent conveyance claim. I DENY summary judgment to Mr. Martin on his counterclaim and DENY as moot Mr. Martin's Motion on all other grounds. I DENY as moot World Fuel's Motion to Strike [59].

IT IS SO ORDERED.

DATED this  13   day of February, 2018.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge